WINSTON-SALEM MASONIC TEMPLE COMPANY v. UNION GUANO COMPANY.

(Filed 26 April, 1913.)

**1. Landlord and Tenant—Written Leases—Interruption.**
   Where there is ambiguity in the wording of a written lease of lands, the doubt must be settled against the lessor.

2. Same—Lessee's Option—Continuance of Term—Period of Time of Lease.

A written lease of lands providing that it shall be "for a term of six months" and that the lessee "may have the privilege of continuing this lease for a term of four years on the same terms and conditions," is construed, from the language employed, to give the lessee either one or two options: a lease for a term of six months or one for four years; and if the latter option is exercised, it will include the six months period, making in all a period of four years from its commencement.

3. Landlord and Tenant — Written Leases—Interpretation—Words and Phrases.

Where a written lease of lands is for six months, with the privilege or option of "continuing this lease for a term of· four years," the words "this lease" refer to the term already created, the words "lease" and "term" being often treated by conveyancers as convertible, and the word "lease" as descriptive of the estate and interest conveyed by the instrument.

4. Landlord and Tenant—Written Leases—Interpretation—Intent.

In construing written leases of land the words employed should be taken in their ordinary sense, unless forbidden by the context, so as to arrive at the intent of the parties to be gathered therefrom.

5. Landlord and Tenant—Option to Continue—Occupancy—Payment of Rent—Exercise of Option—Evidence.

Where a written lease of lands provides for an extension of the term, at the option of the lessee, his continued occupancy of the premises and the payment of rent constitute sufficient notice of his election to extend the term.

APPEAL by defendant from *Cooke, J.,* at February Term, 1913, of FORSYTH.

*Watson, Buxton & Watson for°plaintiff.*
*Louis M. Swink and J. E. Alexander for defendant.*

WALKER, J. This is an action for the recovery of rent. The parties, on 1 April, 1908, entered into an agreement by which plaintiff leased to the defendant the first floor of its building for "office purposes," with this provision: "for a term of six months from the 1st day of April, 1908, to the 1st day of October, 1908. It is further mutually agreed that the said Union

Guano Company may have the privilege of continuing this lease for a term of four years on the same terms and conditions. The first of said monthly installments of $95.83⅓ is to become payable to the authorized collector of the Winston-Salem Masonic Temple Company, of Winston-Salem, N. C., on the 1st day of April, 1908, and on the 1st day of each month thereafter during the continuance of this lease." Defendant took possession of the rooms designated in the lease and occupied the same, not only for the six months mentioned in the lease, but until the 1st day of April, 1912, that is, for four years from the date of the contract, 1 April, 1908. A dispute then arose between the parties as to the length of the term demised, defendant contending that it was for four years in all and ended 1 April, 1912, while plaintiff claimed that it was a lease for a term of four and one-half years and terminated on 1 October, 1912. Defendant refused to pay $95.83, the rent for the month of April, 1912, and this action was brought to recover the same. The court ordered a nonsuit, and the plaintiff appealed.

The decision of the case turns upon the meaning of the contract. The defendant contends that the lease was for only four years, and therefore terminated on 1 April, 1912. If this is the right construction of the lease, the judgment of the court was correct. We must ascertain what was the intention of the parties. What did they mean by what they have said in this paper? If there is any real ambiguity, the doubt must be settled against the lessor, for "it is a general rule, in construing provisions of a lease relating to renewals, where there is any uncertainty, that the tenant is favored, and not the landlord, because the latter having the power of stipulating in his own favor, has neglected to do so; and also upon the principle that every man's grant is to be taken most strongly against himself. Taylor's Landlord and Tenant (9th Ed.), sec. 81." *Kaufman v. Liggett,* 209 Pa. St., 87. But we have concluded that, upon a fair and reasonable construction of the instrument, its meaning is in accordance with the contention of the defendant. We think the language of the parties justifies the inference that they intended to give to the lessee either one of two options, a lease for a term of six months or one for a term of four years.

The language is that he shall have a term of six months, with a privilege or option of "continuing *this lease* for a term of four years." The words italicized by us are important in ascertaining the meaning. They can only refer to the lease, or, more properly speaking, the term already created. The words "lease" and "term" are often treated by conveyances as convertible, and the use of the word "lease," as descriptive of the estate or interest conveyed by the instrument, is recognized by the authorities. Taylor Landlord and Tenant, sec. 16; *Harding v. Seeley*, 23 All. Rep., 1118. One of the definitions of the word "lease" is, "any tenure by grant or permission; the term of duration of such tenure; any period of time allotted for possession." The indenture or writing is the evidence of the lease, although the term "lease" is sometimes used to designate the writing or instrument itself. *Mattlage v. McGuire*, 111 N. Y. Sup., 1083. More properly, it should describe the conveyance by which the tenure or term is created (Black's Dict., 1 Ed., p. 697), but Webster defines it as applying indifferently to the demise or letting of lands for life; for a term of years or at will; to the contract for such letting; to the tenure itself or the term during which it holds good—the allotted term. So that we cannot confine ourselves to the strict technical definition of the terms used in the contract without, perhaps, doing violence to the intention. We must search for the purpose in the instrument and be governed by its language, it is true, but it should not be subjected to any strained or narrow construction, for he who stops at the letter "goes but skin deep into the meaning." Broom L. M., 657; *Hornthal v. Howcott*, 154 N. C., 228; *Rhyne v. Rhyne*, 151 N. C., 403; *Martin v. Martin, ante*, 41. The words should be taken in their ordinary sense, unless this construction is forbidden by the context, nor should a lease, more than any other contract, be interpreted according to the strict letter, especially if it will defeat the manifest intention, as gathered from the whole instrument. 24 Cyc., 915. If we accept this view of the matter, the words "this lease" refer to the estate or term created by the contract, not necessarily to the six months term, but to the entire term, the extreme continuance or length of which should be four years.

The word "continue" imports duration, and as used in the contract it meant· that the six months term should be extended in duration from its beginning for a term of four years, and no new or additional term was created. In other words, the term of six months was enlarged into one of four years. This construction we believe to be more in harmony with the authorities than the other. *Delashmar v. Berry,* 20 Mich., 292 (20 Am. Rep., 392), is a leading case, in which there was a lease of premises "for the term of one year, with the privilege of having the same for three years for the same rent, at the option of the lessee," and it was held to create only one term of one year or three years, as the lessee might elect. The lease in *Gensler v. Nicholas,* 151 Mich., 529, was "for the term of three years, with privilege of five years, for the sum of $25 annually," which was held to grant one term of three or five years, and not a term of three years with the privilege of five additional years. *Kimball v. Cross,* 136 Mass., 300, is more like our case in the words employed to fix the duration of the term. The lease was "for the term of one year for $75, with the privilege of *continuing* five years at $100 per year," which was construed to be a lease for a single and continuous term of one or five years at the lessee's option, the extended term provided for as a substitute for the original one, if the lessee exercised the right of choice, being called the optional term, the original term being fixed at all events. Those contracts were held to be for a definite term of so many months or years, with an option for a longer or extended term, and the continuance of the *same* state of things or the *same* relation. The Court said in *Kimball v. Cross, supra,* that the words were apt "to create a *then* present demise (of the longer term), when, at the end of the first year, the occupation continued," and the election was made by the lessee. See, also, *Montgomery v. Commissioners,* 76 Ind., 362; *Quinn v. Valiquette,* 8 Vt., 434.

Having held that the original term of six months was merely prolonged or lengthened out to one of four years by the terms of the option clause, it follows that the ruling of the court was correct, for, at common law, if a tenant holds over by consent, given either expressly or constructively, after the determination of a

lease for years, it is held to be evidence of a new contract, without any definite period, and is construed to be a tenancy from year to year (*Montgomery v. Commissioners, supra*) ; but when the lease provides merely for an extension of the term, at the option of the lessee, nothing need be affirmatively done by the lessor, as the continued occupancy of the premises by the lessee and the payment of rent constitute sufficient evidence of his election to extend the term. *Quinn v. Valiquette* and other cases, *supra*. While defendant, by his conduct, elected to take the longer term, he has paid the rent to the end of the time for which it lasted, and, therefore, is not liable to the plaintiff for the installment of rent which he now alleges to be due.

We may well repeat what we have said, that if the construction we have placed upon this lease is not perfectly clear or free from uncertainty, the doubt as to its meaning is equally fatal to the plaintiff's contention. It would have been easy for him to free it from ambiguity by the mere insertion of one word. He should not have left it uncertain whether the optional term was to be for four years from the end of the six months or from the beginning. *Murrell v. Lion,* 30 La. Ann., 255; Broom's Legal Maxims (6 Am. Ed.), star p. 571; *Dunn v. Spurrier,* 3 B. and P., 399; 24 Cyc., 1337. In no view, therefore, was there any error in the judgment.